UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO.: 3:12-cv-00102

| | |
|---|---|
| JUSTUS A. OKETCH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| JPMORGAN CHASE & CO., INC., ) | |
| SUCCESSOR TO WASHINGTON ) | |
| MUTUAL, INC., ) | |
| ) | |
| Defendant. ) | |
| ) | |

THIS MATTER is before the Court on Defendant's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6). The Motion is fully briefed and ripe for determination. For the reasons set forth herein, Defendant's Motion to Dismiss is GRANTED.

**I. BACKGROUND**

Plaintiff Justus Oketch alleges that he bought real estate in January 1981 with a $38,050 loan from the North Carolina Federal Savings and Loan Association ("North Carolina Federal"). (Complaint at ¶ 9). In exchange for the loan, Plaintiff executed a promissory note and a deed of trust in favor of North Carolina Federal. *Id* at ¶¶ 10-11. Plaintiff claims that Fleet Mortgage Corporation ("Fleet") later "took over the loan." *Id* at ¶ 14. Subsequent to Fleet's involvement with the loan, Plaintiff alleges that "Washington Mutual Home Loans, Inc." ("Washington Mutual") became successor in interest by merger to Fleet." *Id* at ¶ 15.

Plaintiff claims that the promissory note required him to repay his loan by making principal and interest payments of $496.55 per month. *Id* at ¶ 13. Part of each month's payment came from

a $111.46 subsidy paid by the Department of Housing and Urban Development under the National Housing Act. *Id* at ¶¶ 16-21. Plaintiff had to complete an eligibility form in order to obtain the subsidy, and Plaintiff claims that, although he properly submitted the form to HUD, "based on Plaintiff's alleged failure to submit an annual eligibility form... [n]o subsidy payments were made to Fleet from October 2000 through February 2001." *Id* at ¶¶ 17, 19. Plaintiff alleges that he continued to pay part of the monthly payment during that five-month period and he admits that the partial payments resulted in an arrearage of $557.30. *Id* at ¶¶ 20-22.

Plaintiff claims that his loan was referred to foreclosure as a result of the arrearage. ¶ 23. In fact, Washington Mutual commenced a judicial foreclosure action in North Carolina Superior Court. *See Washington Mutual Home Loans, Inc., successor in interest by merger to Fleet Mortgage Corp., v. Justus Oketch and the United States of America by and through the Department of Housing and Urban Development*, Mecklenburg County Superior Court Civil Action No. 05 CVS 4039 (the "Judicial Foreclosure Action"). Plaintiff appeared informally in the judicial foreclosure action through various counsel, but he never formally answered or otherwise pled. See Defendant's Memorandum in Support of Motion to Dismiss, Exhibit A at ¶ 5 (the Order Entering Default and Default Judgment as to Justus Oketch, and Summary Judgment as to the United States of America entered in the Judicial Foreclosure Action on November 14, 2005 (the "Judgment")). Washington Mutual obtained a default judgment against Oketch on November 14, 2005 (the "Judgment"), in which the court specifically found that Oketch defaulted on the note. (Judgment at ¶ 8). The state superior court awarded Washington Mutual the sum of $58,337.48 - consisting of $30,651.21 in principal, $22,566.87 in interest, $5,119.39 in other collectible sums - and authorized the substitute trustee on Oketch's deed of trust to foreclose on the property securing Oketch's loan. (Judgment

at ¶¶ (2), (4)). There is no record of appeal from the Judgment and Plaintiff does not allege any appeal.

Plaintiff's Complaint alleges that Washington Mutual purchased the Oketch property at a foreclosure sale on December 29, 2005, obtained an Order for Writ of Possession against Plaintiff on February 16, 2006, and conveyed the property to HUD on May 16, 2006. (Complaint at ¶¶ 30-31). HUD, in turn, allegedly sold the property to Terry Albert Smith on October 6, 2006. *Id* at ¶ 32.

Plaintiff filed the Complaint in this action against JPMorgan Chase & Co. ("JPMC & Co.") in North Carolina Superior Court on January 11, 2012, alleging claims for breach of contract, fraud, breach of common-law and statutory duties of good faith, and violations of North Carolina's Unfair and Deceptive Trade Practices Act. JPMC & Co. timely removed the lawsuit to this Court based on diversity jurisdiction and then filed the instant Motion to Dismiss.

## II. LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the plaintiff's complaint. *See Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). When deciding a 12(b)(6) motion to dismiss, a court must "accept as true all factual allegations" presented in the complaint. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 589 (2007). In order to survive a 12(b)(6) motion to dismiss the plaintiff's complaint must contain more than mere legal conclusions. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). A complaint must plead facts sufficient to "raise a right to relief above the speculative level" and to demonstrate that the claim is "plausible on its face." *Twombly*, 550 U.S. 544, 570 (2007). The claim is facially plausible when the factual content of the complaint allows the court to "draw the reasonable inference that the defendant is liable for the misconduct." *Iqbal*,

129 S. Ct. 1937, 1949 (2009). Thus, if a complaint establishes a sufficient legal and factual basis for the claims asserted the motion to dismiss will be denied.

### III. ANALYSIS

#### A. Plaintiff Fails to Allege Facts to Establish that Defendant can be Held Liable

Plaintiff's Complaint lacks factual allegations demonstrating any conduct attributable to the Defendant. A single sentence in the Complaint connects Defendant to this action. (Complaint at ¶ 6 ("For the purposes of this Complaint, all acts and omissions against Defendant's Predecessors in Interest are imputed against Defendant, and any reference to Defendant's acts or omissions is intended to include the acts and omissions of Defendant's Predecessors in Interest."). This sentence is merely a legal conclusion and it fails to meet the factual pleading requirements set forth in *Twombly* and *Iqbal*. There are simply no allegations in Plaintiffs Complaint that Defendant engaged in any of the actions and omissions and there are no factual allegations that would allow this Court to find that Defendant should be held liable for the actions and omissions of its predecessors.

Defendant did not assume any liability of Washington Mutual by purchasing certain assets of Washington Mutual from the Federal Deposit Insurance Corporation (the "FDIC"). The Purchase and Assumption Agreement (the "P&A Agreement")[1] through which Defendant purchased certain assets of Washington Mutual makes it clear that Defendant did not assume any liability that would support the instant lawsuit. See Defendant's Memorandum in Support of Motion to Dismiss at Exhibit B. Significantly, Section 2.5 of the P&A Agreement expressly insulates Defendant from:

> ...any liability associated with the borrower claims for payment of or liability to any borrower for monetary relief, or that provide for any other form of relief to any

---

[1] Several Courts held that, when ruling on a 12(b)(6) motion, a Court may take judicial notice of the P&A Agreement, which is publicly available on the FDIC's website. *See McCann v. Quality Loan Serv. Corp.*, 729 F. Supp. 2d, 1238, 1241 (W.D. Wash. 2010); *Rosenfeld v. JPMorgan Chase Bank, N.A.,* 732 F. Supp. 2d, 952, 958 (N.D. Cal. 2010). This Court finds these rulings instructive on that point and takes judicial notice of the P&A Agreement.

borrower, whether or not such liability is reduced to judgment, liquidated, or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, legal or equitable, judicial or extra-judicial, secured or unsecured, whether asserted affirmatively or defensively, related in any way to any loan or commitment to lend made by the Failed Bank prior to failure, or to any loan made by a third party in connection with a loan which is or was held by the Failed Bank, or otherwise arising in connection with the Failed Bank's lending or loan purchase activities are specifically not assumed by the Assuming Bank.

In reliance on Section 2.5 of the P&A Agreement, courts dismissed claims against JPMorgan Chase Bank, N.A. that are based on the pre-sale actions and omissions of Washington Mutual. *See McCann,* 729 F. Supp. 2d at 1241-42; *Rosenfeld*, 732 F. Supp. At 960; *Yeomalakis v. FDIC*, 562 F.3d 56, 60 (1st Cir. 2009). This Court finds the reliance of other courts on Section 2.5 of the P&A Agreement instructive.

All of the actions and omissions alleged in the instant lawsuit occurred before JPMorgan Chase Bank, N.A.'s purchase of some of Washington Mutual's assets on September 25, 2008. Thus, Plaintiff's claims are subject to dismissal and this Court GRANTS Defendant's Motion to Dismiss.

### B. Plaintiff's Claims are Barred by the Doctrine of Res Judiciata

The Complaint alleges that a judgment concerning the loan was entered in favor of Washington Mutual against Plaintiff in North Carolina Superior Court on November 14, 2005 (the "Judgment"). Even if Defendant was the successor in interest to North Carolina Federal, Fleet, and Washington Mutual regarding Plaintiff's note and deed of trust, then Plaintiff's claims are barred due to the entry of the Judgment against him.

The Fourth Circuit held that, "[f]ederal courts must give the same preclusive effect to a state court judgment as the forum that rendered the judgment would have given it." *Sartin v. Macik*, 535 F.3d 284, 287 (4th Cir. 2008). Once a final judgment is entered in a prior proceeding, the doctrine of "[r]es judicata, or claim preclusion, bars the relitigation of any claims that were or could have been raised in [the] prior proceeding between the same parties." *Id*. The doctrine also extends to

bar persons in privity with the parties to the original proceeding from asserting such claims in a later proceeding. *See Phillips v. Phillips*, 46 N.C. App. 558, 561, 265 S.E.2d 441, 443 (1980). Default judgments are among the types of judgments to which the doctrine gives preclusive effect. *Sartin*, 535 F.3d at 289.

According to the North Carolina Supreme Court, in *Painter v. Wake County Bd. of Educ.*, 288 N.C. 165, 173, 217 S.E.2d 650, 655 (1975), the preclusive effect of the doctrine of res judicata is broad:

> The plea of Res adjudicata applies, except in special cases, not only to the points upon which the court was required by the parties to form an opinion and pronounce a judgment, but to every point which properly belonged to the subject in litigation and which the parties, exercising reasonable diligence, might have brought forward at the time and determined respecting it. [The] extent of the rule can impose no hardship. It requires no more than a reasonable degree of vigilance and attention; a different course might be dangerous and often oppressive.

Furthermore, both the North Carolina Court of Appeals and the United States Supreme Court held that:

> [A] judgment rendered upon a promissory note is conclusive as to the validity of the instrument and the amount due upon it, although it be subsequently alleged that perfect defenses actually existed, of which no proof was offered, such as forgery, want of considerations or payment. If such defenses were not presented in the action, and established by competent evidence, the subsequent allegation of their existence is of no legal consequence. The judgment is as conclusive, so far as future proceedings at law are concerned, as though the defenses never existed.

*Cromwell v. County of Sac,* 94 U.S. 351, 352-53 (1877); *Phillips v. Phillips*, 46 N.C. App. 558, 562, 265 S.E.2d 441, 444 (1980).

Here, Plaintiff's claim for breach of contract is premised on the allegation that "Defendant breached the terms and conditions of the contract by foreclosing on the Note despite Plaintiff's consistent monthly payments on the indebtedness secured thereby." (Complaint at ¶ 37). However, in the Judgment, the state superior court held that Oketch defaulted on the promissory note and that the substitute trustee on Oketch's deed of trust was authorized to conduct a foreclosure sale. *See*

Judgment. It is apparent that Plaintiff attempts to relitigate matters already subject to final adjudication by another court and he is barred from doing so by the doctrine of res judicata.

To support his fraud claim, Plaintiff alleges there was a false representation or concealment regarding the amount owing on the loan and Plaintiff notes that he was led to believe that $58,337.48 was owed. (Complaint at ¶¶ 42, 45). Again, under the doctrine of res judicata, Plaintiff cannot now relitigate that matter.

Finally, Plaintiff alleges claims for breach of the covenant of good faith and violation of North Carolina's Unfair and Deceptive Trade Practice Act. He alleges no additional facts to support those claims and this Court must rely on the factual allegations made to support the breach of contract and fraud claims. The facts supporting the breach of contract and fraud claims were resolved by the Judgment and cannot be relitigated in this forum. Thus, Plaintiff's claims for breach of the covenant of good faith and violation of North Carolina's Unfair and Deceptive Trade Practices Act are barred by the doctrine of res judicata.

### IV. CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss is GRANTED and Plaintiff's Complaint is DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.

Signed: June 13, 2012

Graham C. Mullen
United States District Judge